The City of Racine vs. Emerson.

THE CITY OF RACINE, Respondent, vs. EMERSON, Appellant.

*April 11 — May 2, 1893.*

*Boundaries: Streets: Resurvey: Evidence.*

1. In determining whether a fence which has been maintained for more than forty years is upon the true line of the street or not, the question is as to the location of such line according to the original plat made prior to the erection of the fence, and not according to a resurvey by the city authorities nearly forty years later, by which, after fixing the line of one street from one of the original monuments, the distances were apportioned between the several blocks and the street lines changed accordingly.

2. Although according to such resurvey the fence in question was more than two feet within the street, evidence that it was built according to stakes set by the surveyor who made the original plat, that it is on a line with other fences and buildings erected according to stakes set at the time the original plat was made, and that all said fences have been maintained on substantially the same line for more than forty years, is *held* to show that the fence in question was built on the true line.

3. Evidence as to statements made by the surveyor who made the original plat, as to his subsequent recognition of stakes set by him at that time and his pointing out the true line in accordance with them, was admissible.

APPEAL from the Circuit Court for *Racine* County.

Action to recover a penalty for obstructing Wisconsin street in the plaintiff city. The facts are stated in the opinion. The testimony relating to the location of fences and structures on Wisconsin street not fronting on defendant's premises, and all testimony as to the existence of stakes and the pointing out of them by Mr. Vilas and others as the original stakes, and all hearsay testimony of what Mr. Vilas and others had said relating to such stakes or of surveys, was admitted subject to the objection of the plaintiff. The defendant appeals from a judgment in favor of the plaintiff.

*J. E. Dodge*, for the appellant, argued, among other things, that the acts of early settlers are controlling in the ascertainment of the location of the line actually run and marked by the original surveyor. *Racine v. J. I. Case Plow Co.* 56 Wis. 539; *Miner v. Brader*, 65 id. 537–542; *State v. Schwin*, id. 207; *Nys v. Biemeret*, 44 id. 104; *Koenigs v. Jung*, 73 id. 178; *Vroman v. Dewey*, 23 id. 530; *Marsh v. Mitchell*, 25 id. 706; *Fleischfresser v. Schmidt*, 41 id. 223; *Hrouska v. Janke*, 66 id. 252; *Orena v. Santa Barbara*, 91 Cal. 621; *Vandusen v. Shiveley*, 22 Oreg. 64; *Coy v. Miller*, 31 Neb. 348; *Jones v. Poundstone*, 102 Mo. 240; *Diehl v. Zanger*, 39 Mich. 601–604; *Beaubien v. Kellogg*, 69 id. 333. The evidence of declarations and statements of

the original surveyor, Vilas, and reputation as to location of surveyed lines and authenticity of stakes, was admissible. *Adams v. Blodgett*, 47 N. H. 219, 90 Am. Dec. 569; *Wood v. Willard*, 37 Vt. 377, 86 Am. Dec. 716; *Tyrone M. & M. Co. v. Cross*, 128 Pa. St. 636.

*Samuel Ritchie*, for the respondent, contended, *inter alia*, that parol evidence as to the existence of marks, stakes, or monuments of the survey not mentioned or referred to on the plat was not admissible. *Bruckner's Lessee v. Lawrence*, 1 Doug. (Mich.), 19; *Gove v. White*, 20 Wis. 432–433; *Hedge v. Sims*, 29 Ind. 574; *Hough v. Horn*, 4 Dev. & B. (N. C. Law), 228; *Overton v. Davisson*, 1 Grat. 211; *Waugh v. Waugh*, 28 N. Y. 94; *Yanish v. Tarbox*, 49 Minn. 268; *Drew v. Swift*, 46 N. Y. 204, 207, 209; *Nys v. Biemeret*, 44 Wis. 109. The testimony as to declarations made by Mr. Vilas was incompetent. 1 Greenl. Ev. sec. 145; 3 Washburn, Real Prop. 427; *Wood v. Foster*, 8 Allen, 24.

ORTON, J. This action is to recover the penalty, under a city ordinance, for the maintenance of an obstruction by the defendant, consisting of a fence in front of lots 11 and 12, in block 10, on the plat made by one Moses Vilas, in 1842, of section 16,— the school section,— as an addition to the village of Racine, on the east side of Wisconsin street. It is claimed that said fence is within the east side of Wisconsin street, two feet at one corner of said lots, and two feet eight inches at the other corner. The defendant has been present with this fence standing substantially where it is now since 1848, so that if this fence is an obstruction to Wisconsin street it is a very ancient one and the defendant has been guilty of maintaining it over forty years. The following seem to be the facts established by the evidence:

This fractional section 16 was surveyed and platted, under an act of the territorial legislature requiring such duty to be performed by the school commissioners of the

village of Racine, by one Moses Vilas, a surveyor, and competent to do such work, first, in 1842. The north and south streets on this plat were intended to correspond with, and to be a continuance of, the north and south streets in the old village plat of section 9. The first street north and south was Main street, near the lake; the next, Wisconsin street; and the next, Barnstable street, now called College avenue; the next, Chippewa street, now called Park avenue; the next, Villa street; the next, Campbell street, now called Grand avenue; and the next, Center street. The blocks were divided into lots as far west as Villa street and as far south as Twelfth street; and the lots of the defendant were on the southeast corner, between Wisconsin street and Ninth street, running east and west. In 1845 this plat was resurveyed by the said Vilas, and the lots and streets in the vicinity of the lots in question remained unchanged; and Wisconsin street extended south to the section line, and the blocks not before divided were divided into lots. In 1849, after the state was admitted into the Union, in accordance with R. S. 1849, p. 763, sec. 5, the appraisers of school lands, whose duty it was to plat and appraise school lands, adopted this plat of 1842 as extended in 1845, and filed the same in the office of the secretary of state, as the plat of this fractional school section. On these plats the blocks are 480 feet long north and south, and 240 feet wide east and west, divided into tiers of six lots each, 80 feet wide and 120 feet deep, according to the certificate; but these measurements were not very accurate, and varied considerably, as might be expected in surveying through a heavily timbered and wild tract of land. Stone monuments were placed in many places, as required by the statute then in force, and probably many stakes were stuck, to indicate the fixed lines of the survey; and one stone monument was placed at the southeast corner of lot 12, block 29, which still remains as a fixed point for any

subsequent surveys. The defendant in 1848 owned the lot next north of his present lots 11 and 12, and he called upon the said Vilas, as a surveyor and the maker of the plat, to determine the west line of his lot on Wisconsin street. There were then fences all along for a considerable distance on the east side of that street north and south, and in front of his lot, and had been for several years. The said Vilas determined and indicated said fence at the southwest corner of lots 11 and 12, between Wisconsin street and Ninth street, as on the true line. The present fence is on that line, and a fence in front of said lots has been on the same line since and before 1848. This old plat did service and was the basis of all the local surveys of the lines of lots on streets between owners during the settlement and improvement of this part of the city of Racine, down to the year 1881, when the common council of said city adopted a new and arbitrary plan of a resurvey and replatting of this part of the city, and employed surveyors to do the work according to such plan. They fixed the line of Main street according to said stone monument, and then made all the other streets north and south agree with that line, making the streets sixty feet wide, and divided the distance between Main street and Villa street equally between the blocks, as also the distance between Villa street and Center street between the included blocks, dividing the surplus equally between the blocks. By this plan the lines of lots were materially changed, and the location of fences and buildings had to be materially changed to suit the new lines. Monuments were set at various points by this plan and resurvey in 1881, and in 1890 the city engineer, by the order of the common council, ran the lines of Wisconsin street according to said monuments and the newly-found distances, and found that the fence of the defendant was within that street, as above stated. On the ground of this new line, so found, this action is predicated.

As early as 1844 the lots in this part of the city were occupied by lessees or purchasers, and fences were built along Wisconsin street according to stakes set to indicate the lines according to the old plat, and such fences, or many of them, still stand in the same places; and shade trees were set out and buildings erected on or according to such lines. Immediately across Ninth street, south of defendant's lots, is the lot of Dr. Hoy; and next to his is the lot of I. H. Tinsler; and in 1846 a fence was built on the east side of Wisconsin street in front of their lots and the next half lot south, so that there was about 200 feet of continuous fence along that line, which was built according to stakes set at the corners of the blocks and lots by the said Vilas to indicate the true line according to his plat. In the next block south, Henry S. Durand owned the lots in 1849 or 1850, and found the fences built in front on Wisconsin street as old fences, and found the stakes at the corner of the lots according to which they were built; and they were then identified by the surveyor, Foster, as the stakes set when the plat was made. The said Durand built his buildings, still standing, according to said line so determined; and said fences and buildings correspond with the fence in front of the defendant's lots. There was also a brick barn built by Mr. Case at an early day, north of these lots, whose water table corresponds with such line. Many survey stakes of the first plat were standing at the corners of the lots and blocks between 1842 and 1850, and then observed and since identified by several witnesses; and they stood on the line of said fences along Wisconsin street.

On these facts the circuit court found that the survey according to said plan of the city council of 1881 was a correct one and should govern in determining the true east line of Wisconsin street, and held the defendant guilty of obstructing said street by said fence, and judgment was rendered against him for a fine of $10 and costs.

The ruling question in this case is, Where is the east line of Wisconsin street in front of the lot in question, according to the Vilas plat of 1842? *Miner v. Brader*, 65 Wis. 537. It is not, Where is such line according to any subsequent survey or plat? All resurveys or subsequent surveys are of no effect except to determine that question. A resurvey that changes lines and distances and purports to correct inaccuracies or mistakes in the old plat is not competent evidence in the case. There are only two questions: (1) Where is the true line fixed by the original plat? (2) Is the fence in question on that line? A resurvey that changes or corrects the old survey and plat can never determine the first question. A resurvey must agree with the old survey and plat to be of any use in determining it. The survey made on the arbitrary plan established by the common council in 1881 does not agree with the old plat in courses or distances, in the dimensions of blocks and lots, or in the lines of the streets. It seems to have been made to correct the old plat, to straighten the streets, and make a better plat than the old one. Resurveys for the lawful purpose of determining the lines of an old survey and plat are generally very unreliable as evidence of the true lines. The fact, generally known and quite apparent in the records of courts, is that two consecutive surveys by different surveyors seldom, if ever, agree; and the greater number of surveys, the greater number of differences and disagreements will occur. When two surveys disagree, the correct one cannot be determined by still another survey. It follows that resurveys are of very little use in such a case as this, except to confuse it. In *Miner v. Brader*, 65 Wis. 537, there were two surveys, and they disagreed; and the court had to resort to the evidence of a practical location of the lines by monuments. Monuments set by the original survey in the ground, and named or referred to in the plat, are the highest and best evidence. If there are none such, then stakes set by the

surveyor to indicate corners of lots or blocks or the lines of streets, at the time or soon thereafter, are the next best evidence. The building of a fence or building according to such stakes, while they were present, become monuments after such stakes have been removed or disappeared, and the next best evidence of the true line.

This case does not differ materially from *Racine v. J. I. Case Plow Co.* 56 Wis. 539; *State v. Schwin,* 65 Wis. 207; *Miner v. Brader,* 65 Wis. 537; *Koenigs v. Jung,* 73 Wis. 178, and some other cases in this court, and is ruled by them. The fence in front of this lot was evidently built according to stakes still standing, which were set by the surveyor Vilas; and this fence is on the line with 200 feet of fence built according to the stakes then standing in the blocks on the south side of Ninth street, and fences and buildings in the next block south built according to stakes then standing by Mr. Durand, only three or four years after the plat was made. This fence also agrees with buildings on the north side of said lot, set according to the original survey. This testimony is almost as conclusive that this fence was built on the line of Wisconsin street as if the original stakes of the survey were still standing there to indicate it. When the testimony is undisputed that this defendant and several witnesses have been there present with these fences forty-five years, and that they have not been materially changed in their location during all that time, the above facts would seem to be the most conclusive evidence that those fences were built on the true line according to the original plat.

In the certificate to the old plat it is stated that a stone monument was set at the southeast corner of lot 12, block 29, in the northwest line of Main street, from which resurveys may be made; and stone monuments were also set at the northeast corner of each of the out lots, or undivided blocks, except those between Main street and the

lake. All these stone monuments, except the first, are now absent. The line of Main street, determined by the first-named monument as a base line for a resurvey, was used for the resurvey made in the plan of the city council of 1881. But it seems that, having thus determined the line of Main street, all the blocks between that street and Villa street were apportioned, and the blocks between Villa street and Center street were also apportioned, and the lines of the intervening streets were changed accordingly. Such a rule of apportionment may be adopted in a suit between lot owners, where all the private parties in interest are represented, and where the lots or blocks are less or more than the dimensions called for by the original plat. It is not presumed, in such a case, that there was a defective survey, but only an imperfect measurement of the whole line. *Pereles v. Magoon,* 78 Wis. 27. To make this principle the basis of a resurvey of the whole plat would cast the lines of private lot owners into general conflict and confusion, and materially affect their rights of property which they had enjoyed for nearly half a century, without their knowledge or consent.

All the defendant needs to show is that the fence in question is on the line of Wisconsin street according to the plat of 1842. That plat became a part of the deeds executed under and in reference to it. *Shufeldt v. Spaulding,* 37 Wis. 668. The defendant and others in the vicinity obtained their titles and went into possession and made their improvements, set out shade trees, and built their buildings with reference to that plat, soon after it was made, and according to the stakes set out by the surveyor to mark the lines of that street then existing in many places. We are satisfied that the defendant resorted to the best evidence in existence of the true line of Wisconsin street in front of his lots. It is fortunate that this evidence is yet in existence. The time will soon come when it will have been

lost by the destruction of all monuments, natural or arti-
ficial, and by the death of the old inhabitants. . Then resort
must be had to evidence of lesser degree to establish an-
cient boundaries, and long-continued occupation with re-
spect to unchanged lines, and reputation, even, may be the
best evidence available. In any case of disputed boundary
the testimony, or even the acts, of the surveyor who orig-
inally established it, and who pointed out the stakes set by
himself to mark the line so many years ago, accompanied
by continued use and occupation in recognition of such
line, is not only proper, but strong, evidence that such was
the true line, and better evidence than a new survey made
more than forty years afterwards, which changes such line.
*Koenigs v. Jung,* 73 Wis. 178. That case would seem to
justify fully the testimony of Vilas's statements which were
objected to by the respondent in relation to his recognition
of the stakes and pointing out the true line in accordance
with them. This line so practically located has become an
ancient boundary, in favor of which the rules of evidence
are and should be liberal.

There have been so many cases similar to this in this
court, and all the various questions here involved have been
so repeatedly settled, that it is supererogation to again re-
peat them. In addition to the above cases are the follow-
ing: *Hrouska v. Janke,* 66 Wis. 252; *Vroman v. Dewey,* 23
Wis. 530; *Marsh v. Mitchell,* 25 Wis. 706; and *Nys v. Bie-
meret,* 44 Wis. 104; and many cases in other states are
cited in the excellent brief of the learned counsel of the
appellant which sustain the same principles. Such cases of
the disturbance of the ancient lines and boundaries of streets,
lots, and blocks in our cities and villages by arbitrary re-
surveys under the authority of their officers ought not to
be encouraged. The public and private owners have ac-
quiesced in the lines established by the first and original
survey and plat, and by practical location and undisturbed

possession for a great many years, and there does not seem to have been any necessity to disturb them at this late day.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to enter judgment in favor of the defendant.

WINSLOW, J., took no part.