WOLLMAN, Respondent, vs. RUEHLE, Appellant.

*November 7 — November 24, 1899.*

*Ejectment: Second trial:* Res adjudicata: *Boundaries: Ancient fences: Adverse possession: Evidence: Transaction with person since deceased.*

1. On appeal from the judgment rendered on the second trial of an action of ejectment, the decision of the supreme court on appeal from the first judgment is *res adjudicata* only so far as substantially the same case is presented.
2. The weight accorded to ancient fences as evidence of the true line between tracts of land is not so great where such line was not at any time marked by original monuments.
3. Notorious, uninterrupted, and unexplained possession of land up to a division fence for twenty years will thereafter be presumed to have been adverse to all the world, not excepting the neighbor across the fence. So far as *Fuller v. Worth,* 91 Wis. 406, may be construed to the contrary it is disapproved.
4. Sec. 4069, Stats. 1898, prohibiting the testimony of a party "in respect to any transaction or communication by him personally with a deceased person," does not forbid testimony of transactions or communications between the deceased and third persons, though in the witness's presence, if he did not participate therein and they were not affected by his presence.

APPEAL from a judgment of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge. *Reversed.*

This action in ejectment was decided by this court, 100 Wis. 31. Thereafter a second trial was had under the statute, and judgment again rendered for plaintiff, from which defendant appeals. The facts, except as noted in the opinion, are sufficiently stated in the report of the former decision.

For the appellant there was a brief by *Christian Doerfler,* and oral argument by *J. H. Roemer.*

For the respondent there was a brief by *Ryan & Merton,* and oral argument by *T. E. Ryan.*

DODGE, J.   Upon the appeal from the first judgment in this case three propositions of mixed fact and law were decided: (1) That the preponderance of the evidence established the correctness of the line occupied by the fence; the proof connecting the survey then before the court with the original lines run and monuments set not being strong enough to overcome the inference or presumption of fact resulting from the location of a fence at a time when original monuments were probably apparent, and its continuance since. (2) That the clear preponderance of the evidence established the location of a fence by agreement in 1856 as the true line, and its maintenance with occupation up to it on both sides for more than twenty years, and that such acts were sufficient to establish ownership.   (3) That, independently both of the true location of the line and of the agreement thereon, the preponderance of the evidence established adverse possession under claim of title by defendant and his ancestor for more than twenty years; that he had acquired title, and plaintiff was barred by the statute of limitations. So far as substantially the same case is presented upon this appeal, the previous decision is *res adjudicata,* whether right or wrong.   *Crouse v. C. & N. W. R. Co., ante,* p. 473;  *Quackenbush v. W. & M. R. Co.* 71 Wis. 472;  *Lathrop v. Knapp,* 37 Wis. 312.

1. As to the first proposition above stated, the evidence was very different on the second trial.   Another survey had been made, and much testimony was introduced of the finding, not, indeed, the stakes or monuments themselves, but the bearing or witness trees specified in the field notes of the original United States survey, and that the points taken by the surveyor for section and quarter-section corners corresponded with these references.   Further, it was shown that in 1876 the town board caused a survey to be made and filed by one Kerns in compliance with secs. 825, 826, Stats. 1898, and that the survey on which plaintiff relied was correct,

as tested by Kern's monuments, as to which latter there was rather indefinite testimony from Kern's chain bearer that the government stakes, as well as witness trees, were found at the corners of the section in question, and stone monuments put in their places. The presumptive correctness of Kern's monuments is established by the statute (sec. 828). The fact that the line between the parties, being the one-sixteenth section line, was not at any time marked by original monuments, deprives it of some of the weight accorded ancient fences in *Racine v. J. I. Case P. Co.* 56 Wis. 539, and *Racine v. Emerson*, 85 Wis. 80, on the presumption that such old fences were located upon the original stakes then visible. In the light of this additional and different evidence, the former decision of this court is not *res adjudicata* as to the fact of the correctness of the fence as marking the true line, and we cannot say that there was any clear preponderance of evidence against the finding in favor of correctness of the surveyed line.

2. As to the two other propositions decided on the first appeal, most careful comparison of the record now before us with the former one fails to disclose any substantial or material variation in one from the other; and we are constrained to hold, as the court then did, that defendant's title to the land on his side of the fence is established by the great weight and preponderance of the evidence, both from an agreement confirmed by more than twenty years' occupation in accordance with it, and from a distinctly adverse holding for the statutory period of limitation. This conclusion is based upon the conclusiveness of the former decision in this case, and while it must be reached none the less whether, as we have said, that former decision were right or wrong, we mean not to imply any doubt of its correctness. If, as counsel urges, there is any measure of conflict between the holding of the court in *Fuller v. Worth*, 91 Wis. 406, and in the decision of this case on the first appeal, there

should be no doubt that the latter correctly expresses the settled doctrine of this court on the subject of adverse holding. *Wilkins v. Nicolai*, 99 Wis. 178, and *Meyer v. Hope*, 101 Wis. 123, together with *Wollman v. Ruehle*, 100 Wis. 31, should suffice to set the question at rest. Possession of land and the exercise over it of the ordinary acts of ownership are cogent evidence of title, unless it appear that they are enjoyed and exercised in recognition of ownership in another. *French v. Pearce*, 8 Conn. 439. So cogent and significant are they that, in protection of true title against destruction by possession not expressly explained, but really held in subordination, our statute (sec. 4210) has been enacted to limit the evidentiary effect of possession by providing that, until it has run uninterrupted for twenty years, a presumption shall exist that it is subordinate to the true title. When that twenty years has run, however, that presumption ceases, and the natural one arises that the possession has from its inception been predicated upon claim of title in the possessor, and not in recognition of another's title and permission. *Crary v. Goodman*, 22 N. Y. 171; *Eldridge v. Kenning*, 35 N. Y. St. Rep. 190. The fact that the land in controversy lies contiguous to a fence dividing the possession of the occupant from that of the party claiming title does not distinguish that situation, in principle, from any other. True, certain evidentiary facts are almost characteristic of division fence disputes, such as the understanding, express or implied from conduct, which the respective owners had when the fence was first located, and their treatment of it thenceforward; but those are evidentiary only, and it is none the less the law that he who maintains notorious, uninterrupted, and unexplained possession for twenty years will thereafter be presumed to have done so adversely to all the world, not excepting his neighbor across the fence.

3. The testimony of defendant to the agreement estab-

lishing the fence line was received against objection, and is here vigorously assailed as prohibited by sec. 4069, Stats. 1898. That section prohibits only testimony of a party "in respect to any transaction or communication by him personally with a deceased person." It does not forbid testimony of transactions or communications between the deceased and third persons, though in the witness's presence, if he did not participate therein and they were not affected by his presence. This construction of the statute is well settled in New York. *Simmons v. Sisson*, 26 N. Y. 265, 277; *Cary v. White*, 59 N. Y. 336; *Hildebrant v. Crawford*, 65 N. Y. 107; *Badger v. Badger*, 88 N. Y. 549, 559. So far as this court has had occasion to approach the question, similar limitation of the statute has been intimated. *Page v. Danaher*, 43 Wis. 221; *Pritchard v. Pritchard*, 69 Wis. 375; *Goerke v. Goerke*, 80 Wis. 520. Unless the transactions or communications are personal, and had with the deceased by the party, either literally or in practical effect, as by participating in or influencing them, they do not fall under the prohibition of the statute, whose words must measure its purpose and application. The transaction testified to by defendant was wholly between Heavner, Malsacher, and defendant's father. Defendant was a seventeen year old boy,— a mere bystander and listener,— and in no wise participated in or influenced the proceedings, so far as appears. He was competent to testify to what transpired.

*By the Court.*— Judgment reversed, and cause remanded with directions to enter judgment for the defendant.