# CASES DETERMINED

# January Term, 1902.

GILMAN, Respondent, vs. BROWN, Appellant.

*May 15—June 19, 1902.*

*Boundaries: Fences: Evidence: Court and jury: Adverse possession:
Trespass: Pleading: Damages.*

1. The question being whether a fence was upon the true boundary line of certain village lots, undisputed evidence that it had originally been built while the survey stakes, set when the village was platted, were still standing, and at a later time had been observed to correspond with at least one of those stakes located on the same line, such location being also confirmed by measurements made from authenticated original corners, some three or four blocks away, is *held* to establish the fence as the true line of the lots, notwithstanding evidence, to the contrary, of recent measurements which were not shown to have started with nor to have followed any points known to have been fixed upon the original survey.

2. Actual occupation, inclosure, and cultivation of land up to a fence for more than twenty years, under claim of full ownership, by plaintiff and his predecessors continuously, duly transmitted from each to his successor with privity between them, establishes title in the plaintiff by adverse possession, even though a strip lying along the fence was not included within the calls of the deed under which the original occupant went into possession.

3. Where, in an action for trespass, the complaint alleges title by deed and also by adverse possession the defendant cannot, after joining issue by answer, demand that plaintiff elect as to how he will prove his ownership.

4. An allegation of adverse possession of land for more then twenty years is not inconsistent with and does not qualify an allegation of ownership by deed.

5. The compensatory damages recoverable in trespass for the destruction of fruit and shade trees are not limited to the depreciation in the market value of the land, but are measured by the value of the things destroyed to the real estate for the purposes of occupancy.

6. Wanton destruction of fruit and shade trees by a trespasser who knew of the occupant's claim to the land, justifies the imposition of exemplary damages.

APPEAL from a judgment of the circuit court for Buffalo county: E. W. HELMS, Circuit Judge. *Affirmed.*

Action for trespass *quare clausum*. The complaint alleged that the defendant wilfully, maliciously, and wantonly broke and entered the plaintiff's close, describing it as lots Nos. 1, 2, and 3, in block No. 2, range No. 2 N., range No. 2 W., according to the original village plat of Mondovi. It described the damage with much detail in the way of destruction of fence, shade trees, and shrubberies, and the effect of such damage upon plaintiff's use thereof in connection with his residence thereon as a homestead. The complaint further alleged that the plaintiff, on the day of the trespass, was, and since has been, and now is, the owner and in possession of the described premises, and that the plaintiff and his ancestors in title had been the owners of, and in continuous, adverse, open, and notorious possession and enjoyment of, the premises up to the fence destroyed by defendant, under claim of title, exclusive of any other right, ever since September 13, 1870.

The answer, while containing a general denial, proceeded to make allegations obviously limiting and defining that denial, consisting of substantially an admission that plaintiff was the owner of the lots described in the complaint, and an allegation that defendant's wife, for whom he acted, was the owner of lands immediately westward of those lots, and that the controversy grew out of a dispute as to whether the fence destroyed was on the west line of plaintiff's premises, or was some distance west thereof, and that his acts in removing

the fence, etc., were done because such fence was on his wife's premises.

At the trial the plaintiff proved without dispute that the village plat of Mondovi was made in 1858 ; that it was marked upon the ground by stakes of a particular description ; that a fence was built in the same location as the fence in dispute long before 1868 ; and that as late as 1869 at least one of the original survey stakes upon that line still existed and corresponded with this fence. He also proved the execution and delivery of· a warranty deed to his father in September, 1870, of the lots in question, and the continued occupation thereof as a residence and homestead by his father and his family and by himself, accompanied by intermediate conveyances and descent, from 1870 down to the time of the alleged trespass; the maintenance of the fence in dispute as the line fence and as the limit of the occupation of plaintiff and his predecessors in title to the east and defendant's predecessors in title to the west of it; also that the defendant derived his title from the same original grantor; and that the fence was pointed out to him as the eastward boundary of his purchase at the time thereof in 1892. It was also proved without dispute that in 1886 one Neal, defendant's predecessor in title, expressly agreed upon this fence as the dividing line, in reliance upon which agreement plaintiff's predecessor in title built a barn close up to the fence, which, however, had afterwards been removed elsewhere upon the lot.

The court directed a verdict for the plaintiff, submitting only the question of damages to the jury, which they answered in the sum of $325. Defendant moved upon the minutes to set aside the verdict and grant a new trial, and afterwards, before judgment, made a second motion for new trial on the ground of newly discovered evidence. Both motions were overruled, and judgment entered for the plaintiff upon the verdict, from which the defendant appeals.

For the appellant there were briefs by *C. M. Hilliard,*

attorney, and *Geo. H. Gordon,* of counsel, and oral argument by *Mr. Hilliard.*

*S. G. Gilman,* for the respondent.

Dodge, J. We shall not find it necessary to consider all or many of the very numerous positions discussed by appellant, for the action of the trial court in directing a recovery in plaintiff's favor reduces the question on appeal to much simplicity. It is merely whether undisputed evidence established plaintiff's right and defendant's trespass. We may at once turn to consideration of plaintiff's right.

Mere possession suffices to support action of trespass against one other than the owner or authorized by him. Plaintiff's possession was uncontroverted, but, as the measure of damages permitted exceeded that applicable to a mere temporary possession, we must examine further as to question of title more permanent in character. The plaintiff did not attempt proof of a complete chain of paper title from the government, but rested with proof of a deed to his father of the specified lots in 1870, devolution of that title upon the father's death in 1880 to his heirs-at-law, and conveyance by them to plaintiff in 1897, with proof of inclosure, cultivation, and actual defined occupation back to the disputed fence from the first deed. The last deed expressly included all land east of that fence. He was probably induced to omit earlier conveyances by a construction of the answer, which both he and the trial court adopted, as admitting plaintiff's ownership of the lots, while denying that the strip invaded by defendant was included within them. Such construction is quite within the bounds of reason, and we by no means repudiate it, though we do not find its adoption necessary to concurrence with the result reached. We shall discuss the case as if complete chain of paper title had not been proved.

It is established that for nearly thirty years plaintiff and

his predecessors have occupied lots 1, 2, and 3 under a written conveyance thereof which marks their occupation as that of sole and exclusive owners, adverse to all the world. Hence the true line of those lots was a proper subject of inquiry. That such true line, as run and marked on the original ·survey, corresponded with the disputed fence, was proved by undisputed testimony that such fence had originally been built while the survey stakes were standing, and that it was at a later time observed to correspond with at least one of those stakes located on the same line. Such evidence is hardly to be overcome after lapse of so long time. *Racine v. J. I. Case Plow Co.* 56 Wis. 539, 14 N. W. 599; *Racine v. Emerson,* 85 Wis. 80, 55 N. W. 177. It was not overcome by evidence of measurements made in 1899 which were not shown to have started with nor to have followed any points known to have been fixed upon the original survey. It was confirmed by measurements made from authenticated original corners some three or four blocks away. We are satisfied that undisputed evidence of the best character now possible established such fence as the true line of the lots conveyed to plaintiff's father by deed in 1870, and occupied thereunder for more than the ten years required by secs. 4211, 4215, Stats. 1898. If this were not so, however, actual occupation, inclosure, and cultivation of all east of the fence, under claim of full ownership, for nearly thirty years, were shown to have been continuous in plaintiff and his predecessors, duly transmitted from each to his successor, in compliance with the rule of privity discussed in *Illinois Steel Co. v. Budzisz,* 106 Wis. 499, 505, 82 N. W. 534. So that, whether the invaded strip was included within the calls of the deed to plaintiff's father or not, it had been acquired by adverse possession for more than twenty years by virtue of secs. 4212–4215, Stats. 1898, under authority of *Meyer v. Hope,* 101 Wis. 123, 77 N. W. 720; *Wollman v. Ruehle,* 100 Wis. 31, 75 N. W. 425; *S. C.* 104 Wis. 603, 80 N. W.

919; *Bishop v. Bleyer,* 105 Wis. 330, 81 N. W. 413. Hence we must hold that the trial court was entirely right in deciding that plaintiff had established, without dispute, both possession and ownership, as well as some trespass, and that the only disputed question was upon the damages.

We may pause here to remark that, since the complaint in terms alleged both possession and ownership as well as trespass, it stated a cause of action, so that defendant's objection to any evidence thereunder was properly overruled, as also the demand that plaintiff be required to elect as to how he should prove his ownership. After joining issue by answer, defendant was too late at the trial to ask any further specification, such as he might have required by a timely motion. Further, the allegation of adverse possession since 1870 was in no wise inconsistent with actual ownership by deed, and did not serve to qualify the assertion thereof.

The actual damages claimed by plaintiff included destruction of shade and fruit trees, berry bushes, and rhubarb plants. Evidence was admitted to prove the value of such things while in position as parts of the realty, and no evidence was given of the diminished value of the land by reason of their destruction. The defendant on the trial substantially conceded this to be the true rule and method of ascertaining damages, and requested no instruction to the jury for any other rule. He now, however, contends that the only measure of damages to the owner for such injuries is the diminished value of the premises. On this question the views of the courts are not uniform. In New York it has been held in a recent case (*Dwight v. E., C. & N. R. Co.* 132 N. Y. 199, 30 N. E. 398) that the only method of measuring compensatory damages from the destruction of fruit and shade trees not valuable after their severance from the property is the lessened value of the land itself. That case is not in accord with some earlier cases in New York, but may perhaps be taken as settling the rule in that state. But a

different view has been taken elsewhere, and it has often been held that, while that method was open to a plaintiff suffering from a wrongful trespass, it was also open to him to offer proof of the value of the things destroyed to the real estate for the purposes of occupancy. That view is declared by Sutherland to be the better one. 3 Suth. Dam. § 1019, citing *Norfolk & W. R. Co. v. Bohannon,* 85 Va. 293, 297, 7 S. E. 236; *Montgomery v. Locke,* 72 Cal. 75, 77, 13 Pac. 401; *Mitchell v. Billingsley,* 17 Ala. 391, 393; *Wallace v. Goodall,* 18 N. H. 439; *Whitbeck v. N. Y. C. R. Co.* 36 Barb. 644; *Folsom v. Apple River L. D. Co.* 41 Wis. 602, 608. The question has never been fully considered by this court, but in *Andrews v. Youmans,* 82 Wis. 81, 52 N. W. 23, the latter method was adopted and passed without criticism, the judgment being affirmed on appeal. We think such rule the safe and proper one.

It must not be forgotten that recovery in trespass is always based upon a wrongful invasion of the plaintiff's rights, and that the rule of damages adopted should be such as to more carefully guard against failure of compensation to the injured party than against possible overcharge upon the wrongdoer. An owner of real estate has a right to enjoy it according to his own taste and wishes, and the arrangement of buildings, shade trees, fruit trees, and the like may be very important to him, may be the result of large expense, and the modification thereof may be an injury to his convenience and comfort in the use of his premises which fairly ought to be substantially compensated, and yet the arrangement so selected by him might be no considerable enhancement of the sale value of the premises, it might not meet the taste of others, and the disturbance of that arrangement, therefore, might not impair the general market value. Hence it is apparent that while the owner may be deprived of something valuable to him, for which he would be willing to pay substantial sums of money or which might have cost him sub-

stantial sums, yet he might be wholly unable to prove any considerable damages merely in the form of depreciation of the market value of the land. The owner of property has a right to hold it for his own use as well as to hold it for sale, and if he has elected the former he should be compensated for an injury wrongfully done him in that respect, although that injury might be unappreciable to one holding the same premises for purposes of sale. The case at bar presents an illustration. Amongst the shade trees claimed to have been destroyed was a well-grown willow tree, furnishing shelter from the weather and from the sun's rays. The plaintiff had erected his barn and arranged his barnyards so as to avail himself of this protection, and the defendant himself testified that, while the destruction of that tree would not impair the selling price of the lots, it would substantially interfere with the comfort and convenience of the plaintiff in the use of the barn and in caring for his domestic animals. No error was committed in admitting the proof complained of.

We cannot sustain the appellant's contention that error was committed by submitting the question of punitory damages to the jury. Defendant knew of plaintiff's claim to the land, and there was evidence which, if believed by the jury, fully warranted an inference of such degree of wantonness in the trespass, if not of actual malicious injury, as justifies the imposition of exemplary damages. The question of such damages being in the case, of course proof of defendant's financial condition was proper, as also an instruction that the jury might properly consider it in fixing the amount. We find no prejudicial error in the rulings of the trial court upon the detail of the examination of witnesses on this subject, to which several exceptions were taken.

The views already expressed indicate that we agree with the trial court upon the propriety of denying the motion on the minutes for a new trial. The later motion, based upon alleged newly discovered evidence, was also properly over-

ruled, for the reasons both that such new evidence could not affect the result, and that no proper excuse was shown for failure to discover it for presentation upon the trial. An inference of defendant's counsel, to which he makes affidavit, that plaintiff could not, under the complaint, offer evidence of ownership or of location of the true line, was so entirely unwarranted as not at all to justify omission to prepare to meet such questions.

Further discussion of the errors assigned would not be profitable; suffice it to say that we find none warranting reversal.

*By the Court.*—Judgment affirmed.