MIELKE, Appellant, vs. DODGE, Respondent.

*March 31—April 17, 1908.*

*Adverse possession: Rebuilding line fence: New entry: Permission: Evidence: Sufficiency: Continuity of possession: Land not included in deeds: Conveyance by husband to wife: Equitable title: Possession by husband: Widow's possession: Absence of intent to claim adversely.*

1. For twenty-nine years there existed a substantial fence between the property of plaintiff and of defendant which was always maintained on the line where originally placed for more than twenty years. About twenty years before the commencement of plaintiff's action defendant and her husband rebuilt the fence on the same line where it was first placed, without objection by any one. Defendant and her predecessors in title always claimed that the fence marked the true boundary line and occupied adversely the land included within it. Plaintiff claimed that during a portion of the time the occupancy of the defendant's grantors was permissive. *Held*, that the rebuilding of the fence amounted to a distinct hostile entry sufficient to ripen into title by adverse possession, even though there had been permissive use prior to that time; and it was incumbent on the true owner to establish permissive use after such entry.

2. In an action in equity to restrain repeated trespasses the evidence is *held* sufficient to sustain the finding of the trial court that the defendant had acquired the property in question by adverse possession, notwithstanding evidence of a permissive use prior to the rebuilding of the new line fence.

3. The continuity of adverse possession is not broken by the fact that the land in controversy was not included in any deeds by defendant or predecessors in title, if the land so claimed was within the limits of the boundary line adopted.

4. Where defendant in adverse possession was a married woman and derived title through a deed from her husband, executed before conveyances between husband and wife were authorized, such deed, although it did not convey a legal title, did convey an equitable title, so that the continuity of the wife's adverse holding was not interrupted.

5. The fact that possession was not delivered at the time of the execution of the deed from husband to wife and that the husband occupied the land for a year after such deed, was not suf-

ficient to interrupt the running of the statute, because the hold-ing by the husband and wife, or either of them, was adverse as against the true owner, especially where, before the com-mencement of plaintiff's action, the entire title and possession had passed to defendant.

6. Where defendant in adverse possession was a married woman and derived title through a deed from her husband before di-rect conveyances between husband and wife were authorized, and the husband occupied the land for a year after such deed but died before commencement of plaintiff's action, and his widow, under sec. 3872, Stats. (1898), was entitled to and did occupy the lands claimed adversely, *held*, there was sufficient privity between defendant and her husband to constitute a con-tinuity of adverse possession from husband to defendant.

7. Evidence of a defendant claiming title by adverse possession to the effect that she never intended to claim beyond the true boundary line, *held* insufficient to defeat her title acquired by actual adverse possession.

APPEAL from a judgment of the circuit court for Sha-wano county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

It is undisputed that the plaintiff is the record owner of lots 1, 2, 7, and 8 of block 38, Danks & Richmond's plat of Shawano, and that the defendant is the record owner of lots 3, 4, 5, and 6 of the same block. The controversy in this case is over the location of a line fence between lots 2 and 7 and 3 and 6 above mentioned. The court found that for a period of twenty-nine years a substantial fence be-tween the property of plaintiff and defendant had existed; that said fence was always maintained on the line where orig-inally placed for a period of more than twenty years, and that the defendant by herself and her immediate grantors has always maintained and claimed that such fence marked the true boundary or division between the land owned and occupied by plaintiff and his grantors and the land occupied by defendant and her grantors and persons in privity with her; that since said fence was built and about twenty years before the commencement of this action the defendant and her husband, Theodore Dodge, rebuilt said fence on the same

line where it was first built, and that no objection was made
by any one to the building of such fence; that defendant by
herself and her immediate grantors and those in privity with
her has occupied the premises up to the fence line and been
in possession up to the line marked by the fence for a period
of more than twenty years before the commencement of this
action; that such possession by defendant was open, adverse,
exclusive, notorious, hostile, continuous, and uninterrupted
for a period of more than twenty years, and upon claim of
ownership up to the fence line; that the strip of land de-
scribed in the complaint is inside of the fence line of the
premises of the defendant and is the strip of land upon which
plaintiff claims that the defendant trespasses; that defendant
has lived on the premises divided by the fence from the
premises of the plaintiff for a period of at least twenty-nine
years and is still living thereon, and that said fence has al-
ways stood there ever since it was built up to the time it was
removed by plaintiff shortly before the commencement of
this action; that defendant did not occupy the strip of land
described in the complaint by permission of any one having
the record title, but held the same under claim of ownership,
claiming that said fence was the true boundary or marked
the true division of the premises occupied and owned by her
and her prior grantors and the property of the plaintiff and
his grantors. The question involved, therefore, is whether
the land lying between the lot line and the fence belongs to
the plaintiff. Judgment was entered for defendant and
plaintiff appealed.

For the appellant there was a brief by *Eberlein & Eberlein,*
and oral argument by *M. G. Eberlein.*

*P. J. Winter,* for the respondent.

KERWIN, J. As appears from the findings, the court be-
low found all the facts necessary to establish the defendant's
title by adverse possession, and found that the fence had al-
ways been maintained on the line where originally placed

for more than twenty years, and that defendant by herself and immediate grantors had always maintained and claimed that such fence marked the true boundary, and that such possession by defendant has been open, adverse, exclusive, notorious, hostile, continuous, and uninterrupted for more than twenty years upon claim of ownership up to the fence line, and that the defendant did not occupy the strip of land in question by permission of any owner of record title, but held the same under claim of ownership, claiming that said fence was the true boundary and marked the true division of the premises occupied and owned by her and her prior grantors. The appellant attacks the findings of fact and claims they are unsupported by the evidence. The proof establishes without substantial dispute that the fence was built where located twenty-five years or more before the commencement of the action, and afterwards rebuilt twenty-two years before the commencement of the action upon the same line as the old fence, and ever since has been maintained as rebuilt; but it is claimed on the part of the appellant that during a portion of the period the use by the defendant's grantors was permissive. This is sought to be established mainly by the evidence of Christenson and Farnsworth.

It is claimed by counsel for respondent that this evidence was not competent; but we shall not stop to consider the objection or decide whether competent or not, because we are clear that the testimony was wholly insufficient, even if competent, to establish the claim. There is evidence that Farnsworth owned the property from 1880 to 1885 or a portion of that time, and that in October, 1885, he deeded it to Christenson. There is evidence, also, that Christenson was in possession before 1885. Farnsworth's testimony with reference to permissive use related to a period shortly after he purchased, and was to the effect that it was agreed that when the new fence was built it should be put on the true line. This testimony, therefore, related to a time prior to the rebuilding of the fence, because the evidence shows that the fence was

not rebuilt until after Christenson was in possession and about twenty-two years before the trial of the action. Christenson's testimony is very meager and simply related to some talk between himself and the adjacent owner, Dodge, to the effect that the adjoining property owner endeavored to buy the strip in question, and also some talk to the effect that the fence should remain where it was for the present rather than sell the land. But there is nothing to show that this conversation was after the rebuilding of the fence, and, taking all the testimony together, the inference is at least strong that this talk was before the fence was rebuilt. Therefore we think it clear that, in order to make this evidence available as tending to establish permissive use, it must be shown that the conversation took place after the fence was rebuilt, which was not done. So we come to the question of whether or not the rebuilding of the fence amounted to an eviction sufficient to ripen into title by adverse possession, even though there had been permissive use prior to that time; and we think it did. *Meyer v. Hope,* 101 Wis. 123, 77 N. W. 720. There being no evidence of any permissive use after the construction of the new fence upon the identical line of the old fence, and the same having been maintained by the different owners for a period of more than twenty years before the commencement of the action, the finding to the effect that there was no permissive use at any time during a period of twenty years immediately before the commencement of the action is fully supported by the evidence and the decisions of this court. *Meyer v. Hope, supra; Bishop v. Bleyer,* 105 Wis. 330, 81 N. W. 413. The erection of a new fence was a distinct hostile entry upon the property, and when maintained for the requisite time operated to overcome the presumption previously existing in favor of the true owner; and it was incumbent upon the true owner to establish permissive use after such entry. *Bishop v. Bleyer, supra; Closuit v. John Arpin L. Co.* 130 Wis. 258, 110 N. W. 222.

It is further insisted that the continuity of possession was broken so as to divest the defendant of any claim which she would have, had the continuity not been broken. This claim is based upon the fact that the strip in controversy is not included in any deed and that defendant claims title through her husband by a conveyance executed in 1892, before our statute giving right to convey lands directly from husband to wife. The first of these propositions has been settled by this court against the appellant. *Gilman v. Brown,* 115 Wis. 1, 91 N. W. 227; *State v. Lloyd,* 133 Wis. 468, 113 N. W. 964. On the second proposition it is said that, there being no law authorizing the conveyance of land directly from husband to wife, and the husband having occupied the premises for a year after execution and delivery of the deed, there was a break in the continuity which defeats the defendant's claim of adverse possession. The fact that the strip of land in dispute was not within the calls of the deed was not sufficient to defeat the claim of adverse possession respecting such tract. *Gilman v. Brown,* 115 Wis. 1, 91 N. W. 227. And although the deed when made did not convey a legal estate, it, under the well-settled doctrine of this court, conveyed an equitable estate, and the fact that possession was not delivered at the time of the execution of the deed was not sufficient to interrupt the running of the statute against the true owner, because the holding by the husband and wife, or either of them, was an adverse holding as against the true owner, and, under the evidence, before the commencement of this action the entire title and possession had passed to the defendant. In any event the widow, defendant, her husband having died before the action was brought, was entitled to dower in this land, and had the right to continue to occupy the same and receive rents, issues, and profits, under sec. 3872, Stats. (1898). So there can be no doubt, we think, under the facts in this case, that there was such privity between defendant and her husband as to con-

stitute a continuity of adverse possession from the husband to the defendant. *McEntire v. Brown*, 28 Ind. 347; *Epperson v. Stansill*, 64 S. C. 485, 42 S. E. 426; *Montague v. Marunda*, 71 Neb. 805, 99 N. W. 653. It was also held by this court in *Ill. S. Co. v. Budzisz*, 106 Wis. 499, 507, 82 N. W. 534, that privity may be created in any way that will prevent a break in the adverse possession, even by parol transfer. *Clithero v. Fenner*, 122 Wis. 356, 99 N. W. 1027.

It is further insisted that the evidence of defendant to the effect that she never intended to claim more than up to the true line was sufficient to defeat her claim of title by adverse possession. But that contention is fully met by the decisions of this court. *Ill. S. Co. v. Budzisz*, 119 Wis. 580, 97 N. W. 166; *Gilman v. Brown*, 115 Wis. 1, 91 N. W. 227; *Ill. S. Co. v. Bilot*, 109 Wis. 419, 84 N. W. 855, 85 N. W. 402; *Bishop v. Bleyer*, 105 Wis. 330, 81 N. W. 413. We hold that the findings are supported by the evidence, and the judgment must be affirmed.

*By the Court.*—The judgment of the court below is affirmed.