Wunnicke, Appellant, vs. Dederich, Respondent.

*March 24—April 13, 1915.*

*Boundaries of land: Ancient fences.*

Ancient fences, built on what were supposed to be the boundary lines of the tract of land in dispute and maintained for at least thirty and probably fifty years, are *held* in this case to fix the correct boundaries, as against modern surveys conflicting therewith and with each other.

APPEAL from a judgment of the circuit court for Richland county: GEORGE CLEMENTSON, Circuit Judge. *Reversed.*

Ejectment. The parties to this action are the owners of adjoining farms, and the plat given on p. 464 (adapted from Exhibit B) shows the location of their respective lands.

On this appeal the controversy is confined to the triangular five-acre tract in the southeast quarter of the southeast quarter of the section, no appeal having been taken from the finding of the circuit court establishing the true boundary line between the northwest quarter of the southeast quarter and the southwest quarter of the southeast quarter. Some time previous to the commencement of this action a survey of the lines of this section was made by Marshall Appleby, the county surveyor, in pursuance of an order of the county court. Being dissatisfied with the Appleby survey, plaintiff caused a survey to be made by one Shranke, and he established the line between the Appleby line and the location of the old fence, as shown on the plat, which had been located there for over thirty years. Before the trial of the action Shranke died and plaintiff had the lines again surveyed by E. J. Lunenschloss, who prepared the said plat, Exhibit B, showing the respective surveys and line fences. Plaintiff brought this action to recover possession of land alleged to be unlawfully withheld from him by defendant, and in his complaint he describes the triangular tract in question as follows: Commencing at the northwest corner of the southeast quarter of the southeast quarter of section 25, township number 10 north, range number 2 east, thence east along the forty line sixty-four rods to the center of the highway which traverses said forty acres in a southwesterly direction from the north line thereof, thence along the center of said highway in a southwesterly direction twenty-five rods, thence in a direct line to a point on the forty-acre line two rods south of the place of beginning, and thence north to the place of beginning.

The court found the true boundary line on the north to be the old fence, represented on Exhibit B by the black dotted line drawn across the forty, and that the west boundary is a line two rods long, extending south from the old fence line, and that the south boundary is a line drawn from the south end of the said two rods, running southeasterly to a point upon the east line of the tract, marked on Exhibit B "Shranke Corner," and the east boundary a diagonal line running from Shranke's corner northeasterly along the east line of the five-acre tract to the old fence.

From judgment entered dismissing plaintiff's complaint this appeal is taken.

For the appellant there were briefs by *Burnham & Black,* and oral argument by *O. D. Black.*

For the respondent there was a brief by *Bancroft & Johns,* and oral argument by *L. H. Bancroft.*

BARNES, J. The southeast quarter of the section in which is located the strip of land involved in this controversy was settled more than fifty years ago, and fences were built presumably on what were supposed to be the boundary lines between the government subdivisions. As early as 1855, according to the abstract offered and received in evidence, the five-acre tract, the boundary of which is here involved, was carved out of the southeast quarter of the southeast quarter. It is undisputed that at an early day, perhaps not long after this particular parcel was separately conveyed, a fence was built on what was assumed to be its southwest boundary line, and that such fence was maintained for a great many years. It fell into decay, however, and at the time of the trial it had disappeared, although the testimony shows that its location could be ascertained without difficulty. The occupants of the lands caused a survey to be made by one Appleby. He located the southwest boundary line of the five-acre parcel to the north of the old fence. The plaintiff was dissatis-

fied with this line and employed one Shranke to make a survey. Shranke located the east end of the south line ten feet to the south of the corner established by Appleby. Both seemed to have established the westerly end of such line at the same point. The two lines were ten feet apart at their easterly end and gradually converged until they met at a common point on the west boundary line. By agreement the plaintiff was to keep up the west half and the defendant the east half of the fence on this southwest boundary line. After the Shranke survey was made, plaintiff built his half of the fence on the Shranke line and the defendant built his portion on the Appleby line, leaving a jog where the fences should unite. The defendant testified that he ascertained that the southeast corner established by Shranke was correct and that he then moved his portion of the fence on to the Shranke line. This new fence had not been in existence for twenty years when this action was begun.

In his complaint, if we correctly understand it, the plaintiff relied on the Shranke survey as being correct. While this survey gave him less land in the so-called five-acre tract than did the boundary lines of the ancient fences, if adopted, it would have given him a strip of land along the boundary line between the northwest southeast and the southwest southeast, to which he would not be entitled if the ancient fences along that line established the true boundary line.

The defendant in his answer relied on the ancient fences as establishing the correct boundary lines. So far as the southwest boundary line is concerned, and that is the only one now in dispute, the parties seem to have reversed their positions in this court, the plaintiff now claiming that the line of the old fence is the true boundary line and the defendant asserting the contrary.

The court correctly held that the old line fence which formed the north boundary line of the five-acre tract should be taken as correct and that the modern surveys should be disregarded as far as this line was concerned. When it came

to the southwest boundary line it did not follow the ancient fence line nor the Shranke nor Appleby surveys. The Shranke corner at the east end of the line was taken as being correct, but its westerly end was located about thirteen feet to the north of the Shranke line. This was no doubt because of the fact that in some of the deeds of conveyance of this parcel the length of the west line was given as two rods, and the length is so stated in the complaint. The reason for taking the southeast corner established by Shranke as correct was no doubt in part at least because it was twenty-five rods from the northeast corner of the strip, this being the distance called for in the complaint and perhaps in some of the conveyances of the parcel of land.

There is a dispute in the evidence as to where the old line fence locates the southwest corner of the five-acre tract. The question was not fully tried out, as the court heard very little testimony on the part of the defendant. There is no doubt whatever on the testimony received that the southwest boundary line established by the court is for the most part north of the old fence line.

No good reason is apparent why the old fences should be taken as establishing the north line and be rejected as to the southwest line. It is true the plaintiff did not claim in his complaint that the fence established this line; but neither did he claim that it fixed the north line. If his claim was disregarded as to one line it should also have been disregarded as to the other. His claim now that the fence is the true line is no more inconsistent than is that of the defendant who asserts that it is not. When the court decided that ancient fence lines should control as against modern surveys it should have adopted all of such lines. Under the repeated decisions of this court the ancient fence lines around this parcel of land, maintained as they were for at least thirty and probably fifty years, should be taken as fixing the correct boundaries of the tract. *Tobey v. Secor,* 60 Wis. 310, 19 N. W. 99; *Welton v. Poynter,* 96 Wis. 346, 71 N. W. 597; *Bishop v. Bleyer,*

105 Wis. 330, 81 N. W. 413; *Wollman v. Ruehle,* 100 Wis. 31, 75 N. W. 425; *S. C.* 104 Wis. 603, 80 N. W. 919; *Brew v. Nugent,* 136 Wis. 336, 117 N. W. 813; *Budzisz v. Ill. S. Co.* 139 Wis. 281, 119 N. W. 935, 121 N. W. 362; *State v. Lloyd,* 133 Wis. 468, 473, 113 N. W. 964; *Pitman v. Hill,* 117 Wis. 318, 94 N. W. 40; *Gilman v. Brown,* 115 Wis. 1, 5, 91 N. W. 227; *Peters v. Reichenbach,* 114 Wis. 209, 90 N. W. 184.

The description in the deed to the plaintiff is ambiguous, but it seems to have been taken for granted that it was intended to convey the five-acre tract originally carved out of the southeast quarter of the southeast quarter of section 25. We think it was error not to hold that the ancient fence fixed the southwest boundary line of the tract. If it is necessary to take further evidence to determine the location of this fence, it should be taken.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings according to law.